Good afternoon we have one case before this panel and Judge Nygaard is with us via audio so if you hear a voice it will be his. Urgent v. United States number on behalf of Appellant Ruby Urgent I would like to reserve five minutes for rebuttal if that's acceptable this case involves a single issue decided by the district court on summary judgment and that is whether Ruby Urgent is an employer within the meaning of title 7 whether she's an employee within the meaning of title 7 the district court said you're contending that she's an employee of the United States Marshal Service is that correct? we're contending that she's an employee of the United States Marshal Service even though she formally applied with the court security contractor MBM can you point to any case that expressly held that the power to hire constitutes a decisive factor in determining employment? I'm sorry your honor can you point to any case that says power to hire is the decisive factor in whether someone is employed or jointly employed? no your honor I cannot but you have a multi-factor test in any case correct we have a multi-factor test under Darden that is used to determine whether an entity is an employer of an employee or entities are employers of employees the Darden test sets forth numerous factors and there are three core factors who paid the employee who had the power to hire and fire her and who controlled the daily employment activities of the employee here we have a situation where the U.S. Marshal Service clearly had the power to hire Ms. Urgent they reviewed her application for employment decided that she was too late in providing certain materials to them and disqualified her from wouldn't it be more accurate to say they didn't hire or fire her they really had a veto power as to whether or not a contractor wanted to hire her your honor I would they had not only a veto power but actually the power to determine who in fact is hired if we look beyond Ms. Urgent well is that a veto power over the people that are actually the employer? they have a veto power in other words no one can get hired if the U.S. Marshal Service well then why did that take you automatically if you have veto power an employee of the person with the veto power your honor I believe if you have veto power you essentially have the power to hire and fire that particular individual and the Marshal Service has gone beyond that here they have said not only do they have veto power or the power to say no to an applicant to the court security officer contractor they also have the power to select who may be hired if there are multiple applicants that are qualified for the same position the U.S. Marshal Service will actually have the power to select the particular individual for hiring so I think that goes beyond veto power working backwards if you have the three most important of the numerous stardom factors it looks like perhaps you could make a good argument that the power to hire is that with the Marshal Service but the payment comes from MVM does it not? yes it does your honor and the control of daily activities comes from MVM? the control of daily activities for the most part comes from MVM although the Marshal Service has the power on an annual basis to review the employment status of the particular employee and to determine whether they are still fit or unfit to continue their employment and that's the joint appendix number 141 there is a document that describes that oversight that the Marshal Service has so there is a continuing duty or responsibility or if you will the Marshal Service has taken so your argument seems to undercut a broad range of employment contracts where contractors hire people and they are subject to the contractor by reason of the employment overview by the person that the contractor has been hired by sure and that's why is that basically what you have here you have a situation where it's very easy to see it as a veto power and you have a number of employment contracts in the everyday commercial world where they want to make sure that the contractor adheres to certain principles and they want to have an overview of what the contractor is doing they don't want to be an employer of the contractor's employees that's correct and that's a very fact specific inquiry where you look at the contractor or the owner or the hire of the contractor to determine how much control they have over the employee under the Darden test that same test is applied however I would argue your honor we have argued in our briefs that when you have the power to hire and fire a particular employee you're making that definitive the veto power the definitive power of a test as to hiring and firing but the case law especially in commercial litigation does not make that the makes it an important factor hiring and firing but it does not make it the definitive factor because the multiple test is well beyond that and it employs a lot of other factors as to who pays and who's supervision they're under while they work and they're not government employees if you employ those multi factors are they? no but I would argue that the power to hire and fire is dispositive you take a very narrow step there because if you have the power to hire and fire you are an employer the cases seen in commercial litigation if an employer can oversee what a contractor is doing and say we don't want this particular employee of yours doing the work that we're contracting you for because he's indignant he doesn't do a good job and so forth you're asking us to undermine all those multi factor tests if you're taking a stand that hire and fire is the answer to the whole question I think in a situation where you have an existing employment relationship we don't have one here you have an existing employment relationship and there's no power to hire and fire another entity pays the contract then courts would look at the numerous factors you just enunciated to determine whether there's sufficient control these are the most important factors let me separate hire and fire by the way which is the second of the three most important hire may be because of the involvement of the marshal service the case but who gets the fire here? let's say this person is hired and her wages are paid by MVM and for the most part her daily activities are controlled by MVM something happens and they wish to terminate her who makes that decision? clearly your honor and the records not entirely clear from this but we do know that the marshal service has the power to fire if they deem the CSO somehow inadequate or no longer qualified to fulfill the responsibilities of that position can MVM also fire? I don't think that's clear from the record I assume that they would also have the authority to fire as well but the record we know at the very least that the marshal service has the power to fire you know you're swimming uphill a little bit in the third circuit we've got this Wilson opinion by Judge Bartlett Martel's opinion which too dealt with rehabilitation I think yeah rehabilitation but it clearly says that in that case there's no employment by the marshal service in that case and the facts are very similar to your case your honor I'm not sure I'm familiar with that case we've cited numerous cases under the rehabilitation act involving facts virtually identical to the facts here where the courts have held, district courts have held that under the rehabilitation act the marshal service is an employer of an employee where they exercise the power to hire and fire court security officers you're not familiar with Wilson versus WVM case at all? I'm not your honor there is one case that Judge Bartlett cited which involved a federal contractor who had refused to grant a security clearance to a particular employee of a contractor and I believe that case is easily distinguishable not granting a security clearance for certain types of conduct that the employee may have been engaged in is far different than having the power to hire or fire an employee so I believe that case is distinguishable and again we've cited cases under the rehabilitation act where they consistently held that the federal government is a joint employer or co-employer of a CSO where there has been the power to hire and fire and the rationale for that is the federal government should not be allowed to hide behind a contract if it's going to exercise the power to fire a particular person we'll hear from Ms. Geersvang and we'll get you right back okay thank you I'm Dana Geersvang for the United States the plaintiff failed to exhaust this theory that the marshal service denied a second extension of time to complete her background check when she affirmatively and repeatedly disclaimed it during the EEO process I just ask an analytical question why did the district court skip the Darden factor analysis? in district court plaintiff didn't make an argument under the Darden factors that came up really in the reply brief and in our brief but that seems to be what you're supposed to look to there's no analysis of that, no mention of it at all so the district court talks about waivers of sovereign immunity need to be read narrowly and the language of the statute doesn't get you there but even looking at the Darden factors what the court is looking at of course is who hired, fired, paid and controlled daily activities and plaintiff alleged that the marshal service hired, trained, supervised and paid the CSOs that really settles that question it can't be that the government is an employer every time they set out minimum but there's a way to go about doing the analysis what I can't figure out is why the way you're supposed to analyze this wasn't even dealt with your honor, plaintiff's theory below and in the opening brief in this court was that there should be a different test for failure to hire cases and that's contrary to the text of the statute as the district court pointed out it simply wouldn't make sense for somebody to be but isn't it normally that you would apply the Darden factors for this particular statute absolutely your honor and under the Darden factors and what's in their complaint we prevail so if the answer is absolutely then not considering the Darden factors are you asking us to consider them or do you think we should remand to the district court I think that you can consider them, I also, plaintiff did not exhaust this argument when she scratched the box for reprisal out, told the EO officer during the investigation she changed that, she wasn't sure what reprisal meant and she changed it to retaliation well no your honor, she didn't and the final agency decision confirmed that you were on notice ultimately that she was making a retaliation claim because of whatever relationship it was that she had with Ms. Lynch, Finch I should say no we weren't your honor, she talked about her relationship with Ms. Finch but not about retaliation and you can see in the final agency decision the decision maker is kind of scratching his head, he says she says it's because she lived with Finch but that wouldn't be a basis for a title 7 claim title 7 covers race, color, religion, sexual orientation did the district court hold that retaliation is not in play because it wasn't played properly no the district court didn't reach the exhaustion but that's a separate threshold basis on which the court can apply but the district court did reach the retaliation issue right yes and did you brief the retaliation issue what do you mean by the, I'm sorry I'm not sure what the court means by retaliation issue Ms. Lynch had a claim against the United States Marshal Service among the claims that she had was that she was not hired because it was retaliatory for her relationship with Ms. Finch who previously had been employed by the Marshal Service correct correct and the district court said that that was not within the statute that the government was not the employee I got it and you briefed that did you not absolutely if this, I didn't personally brief it but the government briefed it if the district court's decision doesn't go into, doesn't address this in the way that the court thinks should be done this court can't affirm on any ground supported by the record and both the exhaustion and the Darden factors give ample space to do that I mean she alleged in her complaint that the contractor hires, trains, supervises and pays the court security officers the district court looked at that, looked at her, both her contract that she signed or the thing that she signed and also her testimony that she didn't think that she was going to work for the Marshal Service which while not determinative is, this court has said, very probative information and looking at that, she hasn't said that she's going to be an employee of the Marshal Service had she pressed a joint employer theory below under Darden, I'm sure the district court would have addressed that but that's not what she did but you were on notice that she claimed that she was an employee of the Marshal Service and that although some misstatement as to what the relationship was with her former roommate it's fair to say you were on notice of all these things and the district judge never really took the multi-factor test into consideration in writing up the district court's conclusion it's true that the district court didn't take the Darden test into consideration but this is an easy case under the Darden test because of her allegations here about who hired, trained, supervised and paid the court security officers to find that the government is the employer under this circumstance would make us the employer of every contractor when we set out minimum criteria for contractors there's an awful lot of government contracts where the government doesn't give the ultimate opinion as to who the employees of the contractor are and the ultimate test of employment, the most important test, is the ability to hire and fire and they have the right to even hire or they can discharge this person does that make your position rather weak before us? no your honor, I'd like to separate this out into two points one is the most important factor and the other is what we did in terms of hiring the only decision we made here was not to grant a second extension of time to complete the background check we didn't decide the merits of her application if we had, we might have considered the fact that she had negative references but that's not what happened here the excuse you gave for that is a little bit very suspect to say the least so far as giving her enough time or additional time because you had to do it right away and then you didn't do anything right away in the first place so it sort of undermines your position that it's her fault that it wasn't resolved in her favor when you said you had to do it right away and you had no one to hire right away so there was somebody else going through the background process at the same time and that person turned down the job, then we had to go back to the drawing board and what we said is that we didn't think she was cooperating with the investigation and that's why the person who made the decision thought that there was a delay but we don't get to that until she's made out a prima facie case and there are a lot of barriers here to making out a prima facie case this is a case in which she has to bring forward evidence raising an inference of retaliation as the likely reason and she's utterly failed to do that we're talking about something that happened five years earlier with a different employer and somebody who's temporarily staying with her that doesn't meet the Thompson criteria well the question is whether or not there's a jury question here as to how close the relationship was sufficient that an employment action might well have dissuaded a reasonable worker from making or supporting a charge of discrimination and is that a legal question or is that something that should go to trial and a jury resolve that question? no your honor, it shouldn't go to trial because she hasn't alleged the basic facts in terms of who controlled hiring she didn't exonerate Mr. Remington no no, I'm talking about the person that she lived with and so forth  and that's another issue of the case but as with the employment relationship as to the multi-factor there is that all for a jury to determine whether this factor overshadowed everything else whether the multi-factor test was applied correctly that might be a question of law I don't know but there's questions of fact here that should the jury resolve as to the closeness of these and whether it was appropriate for the jury to find that there was a retaliation claim here we're at summary judgment and there is nothing in the record supporting that the people who made this decision knew how close they were if you compare to Thompson there the court said that the fiance was an aggrieved person because they worked for the same employer and hurting him was the unlawful act by which the employer punished her there is nothing in our summary judgment record from which you can draw that conclusion well there's a lot there that a plaintiff could say that your position is a pretext by reason of the facts that exist here in this case you may not agree with it, I may not agree with it but is that a jury question whether or not what you're saying, the excuses you're giving are pretextual for your real intent that you up here for her prior roommate your honor, we don't get to pretext and the questions of fact in this case because we don't have the basic requirements for a prima facie case of retaliation this isn't a Thompson case this isn't some place where we have the same employer who was doing something to hurt plaintiff because they wanted to hurt Finch there's nothing in the record that the people in the social service who made this decision even knew that the roommate, the friend had engaged in any protected activity it's not a jury statement you just made though Archie Bish made a statement that a jury might consider and mine but is that a statement you can make to an appellate court where there's evidence that on the other side I'm not saying it's the strongest evidence but there's evidence that what you're saying is not the real reason why you didn't hire her we're at summary judgment and there is no evidence contradicting the sworn statements in the record of the marshal service employees who said that they did not know but in any event on exhaustion I was just going to talk about exhaustion which is certainly a threshold issue which would not go to the jury she checked the box for reprisal but then she scratched it out we've talked about that and I for one am not buying it but were you the question, the problems you have is that the court didn't consider the Darden factors now the three main Darden factors who pays, who hires and fires, who controls daily activities on the hiring and the firing didn't Kirby from the marshal service make a recommendation to Winfield who made a recommendation to Bradshaw what Kirby did was the background investigation so all the marshal service is doing here is seeing if somebody meets the minimum criteria for service who does Winfield work for? Winfield works for the marshal service and who does Bradshaw work for? Bradshaw also works for the marshal service so Kirby, Winfield and Marshall seem like they're making the decision as to who gets hired no your honor, if you look at what happened in this case she applied to MVM, not the marshal service MVM interviewed her MVM evaluated her references they determined her qualifications and they could still hire her for another position had they wanted to what the government did here was decide not to grant a second extension of time to complete the background check because they did not perceive that she was cooperating with the investigation and who made that decision? MVM or the marshal service? the second extension of time was a decision made by the marshal service what the marshal service is doing here is what the government always does in contracting cases is saying does this person meet the minimum criteria under the contract for the job so you've got to tell me what is the involvement in this scenario that you just talked about of Kirby, Winfield and Bradshaw? so Kirby was doing the background investigation and she's a marshal service employee yes, they're all three marshal service employees but before the application comes to Kirby to do the background investigation MVM has already she's already applied to MVM been interviewed by MVM had MVM determined her references and her qualifications and it's only after MVM puts her up as the person to fill this job that the marshal service does the background investigation they're determining if she meets the CSO contract standards as the 10th circuit held in another government contracting case I just want facts for the moment Kirby recommended to Bradshaw that Ms. Planoff here not be hired? no Kirby didn't make a recommendation one way or the other Winfield recommended I thought he recommended that urgent application not be considered no Deputy Winfield recommended to Bradshaw that second extension of time not be granted that resulted in her being ineligible for the job and I thought Bradshaw in turn recommended removing urgent application from consideration when he forwarded the report urgent unurgent to the judicial security division of the United States Marshal Service right so because she hadn't completed the background investigation I see that I'm out of time go ahead I just want to point out that the 10th circuit the 1st circuit the DC circuit have all held this kind of decision about whether a contractor an employee meets the minimum criteria for the job passes a background investigation does not make the government the employee the employer of the contractor which you've got to explain to me or I'm lost it looks as if this went up the chain from Kirby to Winfield to Bradshaw and it looks like there was a recommendation at some point that this person not be this application not be considered and ultimately she was told by MVM that she just wasn't going to be hired so it looks like the decision to hire was made by the Marshal Service the Marshal Service decision was the decision not to complete the background check so Kirby was doing the background check asked Winfield if she could have but why not to complete the background check because she was perceived by Winfield as not cooperating in the investigation had they been looking at the merits of her application they would have considered things like the fact that she had negative references from her past employers but that's not what they were looking at they were looking at the fact that they didn't have her police records and they perceived her as not having Winfield perceived her in particular as not having cooperated with the investigation but again this is only one of the Darden factors and one of the Darden factors that wasn't considered at all by the district court it's one of the Darden factors and had they made an argument were Darden factors considered by the district court no your honor and they didn't argue in district court that this case should be decided under the Darden factors they were arguing in district court that control over hiring was enough regardless of whether or not she was an employee or would have been an employee if hired and the district court rejected that pointing out that these waivers of sovereign immunity have to be read narrowly you're not an employee of the applicant for employment with the United States if you wouldn't be an employee you wouldn't be an employee when you're hired judge am I going to give any questions no judge Ambro you've bashed all the ones that were on my mind alright thank you there are no further questions asked at the case okay the district court did not consider the Darden factors the district court relied on the plain language of did you ask the district court to consider the Darden factors we argued for a essentially argued without expressly arguing for the adoption of the Darden factors that there was sufficient control over the hiring process to deem there was no mention made to judge Bonnell then of whether the Darden factors should be considered there was no control test if Darden is the way to go why wasn't it mentioned in the briefs your honor it should have been mentioned in the briefs and it wasn't and Darden is the test you have made that clear well you didn't make it clear in the district court you certainly didn't make it clear in your position in the district court as was your position here their ability to veto the hiring firing was dispositive your honor our position here is that the Darden factors apply there are three core factors and the hiring and firing that wasn't your position in the district court that was not your position in the district court as I understand the briefing the positions in the district court your position was the ability of them to veto your hiring and firing was dispositive that's correct that's why I read your brief in this court as well your honor I believe we've clarified in our reply brief that the Darden test does apply there are three core factors I had the answering brief but that was not your opening position or your position below the opening position did set forth the Darden test but argued that the power to hire and fire should be dispositive in light of the fact that this is a failure to hire case this is really a case of joint employment is that your position it's absolutely a case of joint employment and the Darden test contemplates joint employers it's not a test to determine who is the employer it's a test to determine who are co-employers or joint employers and we believe there is sufficient evidence in the record for the jury to find that Ms. Urgent was in fact an employee of the marshal service they didn't only have retail power they would select from among the pool of available employees and applicants of all were deemed qualified and they had the power to fire as well Judge Amber you asked about who controlled the hiring process the application was formally made with MBM but when the torch was passed to the marshal service they had complete absolute control over the hiring process they're the ones that determined let's assume that's correct they had complete 100% control over who was hired that doesn't necessarily mean that you have a joint employer you have to look at other factors I would argue that if you look at the three factors we've got two of them we've got the power to hire to fire and we have some control over the I thought you said it looked like the majority of the control was by MBM sounds correct it composes what you said during your opening that there was some control over their activities by the marshal service so if the payment is by MBM and there's some control which sounds like it's less than 50% it sounds like on the core factors it probably tilts against you I would respectfully say it's not dispositive that's the point you're correct it's not dispositive I believe the Darden factors are applied the Libya Darden factors have determined whether there's control of the day-to-day operations or the day-to-day work of the employee in both existing employment relationships if there is a power to hire and fire you don't need to go beyond that your position is you're arguing against yourself at one point you say the Darden factors apply but then you say hire and fire is dispositive that's not the Darden factors your problem in this case is that the only thing the marshal service does is to really have veto power as to who you hire and the ability to fire they don't have the power to fire  they  have  authority to hire and fire the employees so that's not the Darden factors in this case but you have to have the power to fire the employees so that's not the Darden factors in this case but you have to have the authority to fire the employees